Dear Ms. Fortson:
You ask this office to advise you whether the provisions of the Dual Officeholding and Dual Employment Law, R.S. 42:61 et seq., prohibit an elected member of the City of Thibodaux council from also serving as an assistant public defender within the Seventeenth Judicial District.
In order to adequately address your question, a review of recent changes in the law is necessary. Act 307 of the 2007 Louisiana Regular Legislative Session is entitled the "Louisiana Public Defender Act". Act 307 creates the Louisiana Public Defender Board (the Board) and gives the Board all powers pertaining to the regulation of public defender services throughout the state. See R.S. 15:146(A)(1).[1]
Pursuant to Act 307, the duties and functions of each local judicial district indigent defender board are transferred to a "district public defender" for that judicial district.[2] Each district public defender, under the supervision of the Board, manages public defender services provided within his judicial district (see *Page 2 
R.S. 15:161, footnote 3). Each district public defender office is a "political subdivision" for purposes of dual officeholding because each office is a "unit of local government . . . authorized by law to perform governmental functions." See 42:62(9)[3].
The Board must "approve the method of delivery of public defender services for each district" pursuant to R.S. 15:165(B). The methods for providing public defender services permitted by R.S. 15:165 areappointment, contract and employment. R.S. 15:165 provides, in part:
 § 165. Methods of delivery of public defender services; selection of methods; emergency circumstances
 A. The method of delivery in each judicial district shall be approved to the extent that it is meeting or able to meet the performance standards and guidelines of the board. The board may change the method of delivery in order to ensure compliance with best practices reflected in the performance standards and guidelines.
 B. The board shall approve the method of delivery of public defender services for each district upon consultation with and recommendations of the state public defender, the director of juvenile defender services, the regional director for the service region, where applicable, and the district public defenders from the following service delivery methods or any combination thereof:
 (1)(a) Appointment by the district public defender from a list of competent attorneys licensed to practice law in this state and classified according to case-type certification level.
 (b) All appointments shall be on a successive, rotational basis by case-type certification. Deviations from the board's list shall be permitted only to comply with Code of Criminal Procedure Article 512 and in exceptional circumstances upon approval of the board upon recommendation of the district public defender or regional director, where applicable.
 (2) An independent public defender organization qualified with the United States Internal Revenue Service for an exemption from federal income tax under Section 501(c) of the Internal Revenue *Page 3 
Code to provide counsel for indigent defendants. The salaries of the district public defender and all assistants and supporting personnel shall be fixed by the board in compliance with salary and compensation standards adopted pursuant to rule by the board.
 (3) The board may authorize the district public defender or regional director, where applicable, to enter into a contract or contracts, on such terms and conditions as it deems advisable, with one or more attorneys licensed to practice law in this state to provide counsel for indigent defendants in criminal proceedings.
 (4) A full-time public defender office, staffed by full-time lawyers and support staff, or primarily full time with supplemental positions on a contract basis.
In the instant matter, the type of position an assistant public defender holds for purposes of dual officeholding depends upon the method of selection chosen for public defender services under R.S. 15:165. An assistant public defender could hold an appointive office by virtue of his appointment by the district public defender under 15:165(B)(1)(a); he could hold employment under R.S. 15:165(B)(4); and he could hold his position pursuant to contract, as provided by R.S. 15:165(B)(3).
State law prohibits the holding of two or more public offices or employments as defined by law. It is essential to determine the nature of the positions held, as the dual officeholding and dual employment laws, and the prohibitions therein, are applicable to public offices and public jobs which fall within the specific definitions provided for in R.S. 42:62, defining "elective office", "appointive office" and "employment".[4] *Page 4 
The prohibition of law applicable here is R.S. 42:63(D), providing in pertinent part:
 D. No person holding an elective office in a political subdivision of this state shall at the same time hold another elective office or full-time appointive office in the government of this state or in the government of a political subdivision thereof. No such person shall hold at the same time employment in the government of this state, or in the same political subdivision in which he holds an elective office. . . . . .
R.S. 42:63(D) prohibits a local elected official from holding a full-time appointive office in any political subdivision of the state, but does not prohibit a local elected official from holding an appointive office where the latter position is held on a part-time basis. Further, R.S. 42:63(D) prohibits a local elected official from holding any position of employment (whether full-time or part-time) in the same political subdivision in which he holds elected office; however, a local elected official is not prohibited by law from holding a position of employment in a separate political subdivision of the state. Finally, the provisions of the dual officeholding and dual employment laws do not apply where one of the positions held is one of contract rather than employment. See Attorney General Opinion 07-0218, copy attached.
As discussed, R.S. 42:63(D) prohibits one from holding employment in the same political subdivision in which he holds elected office. This prohibition is inapplicable here. A Thibodaux city councilman holding employment pursuant to R.S. 15: 15:165(B)(4) as an assistant public defender does not run afoul of this prohibition because, while he holds elected office within the political subdivision of the municipality, he does not hold his employment with the municipality. Rather, he is employed as an assistant public defender by the district public defender office, a separate political subdivision of the state under R.S.42:62(9).
Further, an assistant public defender selected pursuant to R.S.15:165(B)(1) holds "appointive office" because he holds an office "established. . . . by the. . . . .laws of this state. . . . which is filled by appointment. . . . by. . . . an appointed public official", here the district public defender. When this method of selection is used, R.S. 42:63(D) becomes applicable, and prohibits one from holding local elected office and full-time appointive office; however, R.S.42:63(D) does not prohibit the simultaneous holding of the positionswhere the appointive office is held on a part-time basis. Thus, a Thibodaux city councilman holding appointive office as an assistant public defender pursuant to R.S. 15:165(B)(1)(a) is prohibited from working on a full-time basis, but is not prohibited from holding the position on a part-time basis. "Full time" and "part time" are terms defined by R.S. 42:62(4) and (5), providing: *Page 5 
 (4) "Full time" means the period of time which a person normally works or is expected to work in an appointive office or employment and which is at least seven hours per day of work and at least thirty-five hours per week of work.
 (5) "Part time" means the period of time which a person normally works or is expected to work in an appointive office or employment which is less than the number of hours of work defined in this Section as full time.
The dual officeholding prohibitions are inapplicable where a Thibodaux city councilman holds his position as an assistant public defender pursuant to contract under R.S. 15:165(B)(3). An individual working as an assistant public defender under a professional services contract does not hold a ". . . job compensated on a salary or per diem basis" and is not considered "employed" as defined by 42:62(3).
Of further concern is the possible relevance of the incompatibility provisions of R.S. 42:64, providing in pertinent part:
 A. In addition to the prohibitions otherwise provided in this Part, no other offices or employments shall be held by the same person in combination if any of the following conditions are found to pertain and these prohibitions shall exist whether or not the person affected by the prohibition exercises power in conjunction with other officers:
 *** (6) Funds received by one office or employment are deposited with or turned over to the other office or position.
Incompatibility under R.S. 42:64(A)(6) occurs when an individual in one office or employment remits funds to himself by virtue of his holding another office or position. A legitimate concern would be raised if an individual acting in his Thibodaux city councilman capacity provided himself compensation for working as an assistant public defender. However, the structure of the law pertaining to the funding for assistant public defenders throughout the state eliminates this possibility.
R.S. 15:168 sets up a mechanism for the funding of each judicial district's indigent defender system.[5] This provision creates a system whereby almost all *Page 6 
of the funds for indigent defense come from criminal violation assessments. The statute directs the majority of Louisiana's courts of original criminal jurisdiction (which would include the Thibodeaux City Court) to remit to a judicial district indigent defender fund a set amount for each violation. However, there is no specific provision in the law requiring a municipality to contribute to a judicial district indigent defender fund.
Further, pursuant to R.S. 15:168(A), the indigent defender fund "shall be administered by the district public defender". The salary paid an assistant public defender is set by the district public defender, within the salary guidelines adopted by the Board. See R.S. 15:161(E)(13) and R.S. 15:147(B)(16).[6] The City of Thibodaux neither funds nor has any administrative authority over the compensation paid an assistant public defender. Thus, the incompatibility provisions of R.S. 42:64 are not applicable in this instance.
The answer to your question is fact-sensitive. A Thibodaux city councilman is not prohibited by the dual officeholding provisions from holding full-time or part-time employment as an assistant public defender; neither is he prohibited by the dual officeholding provisions from working as an assistant public defender under a *Page 7 
professional services contract. He is not prohibited by the dual officeholding provisions from holding part-time appointive office as an assistant public defender. The only scenario in which the dual officeholding provisions are violated is if a Thibodaux city councilman holds full-time appointive office as an assistant public defender.
We hope the foregoing is helpful to you. Should you have other questions in which we may provide assistance, please contact this office.
 Very truly yours,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 BY:______________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
 KLK:arg
 Cc:
 Louisiana Public Defender Board 500 Laurel Street Suite 530 Baton Rouge, LA 70801
 Mr. Lawrence Autin Office Manager Lafourche Parish Indigent Defender's Office 206 Green Street Thibodaux, LA 70301 *Page 1 
 OCT 11 2007 OPINION 07-0218
78 DUAL OFFICEHOLDING
R.S. 42:61. et seq.
The prohibitions contained in the dual officeholding and dual employment laws are not implicated when a state employee enters into a professional services contract with a parish or municipal governing authority.
Mr. Paul M. Charron 527 Lagarde Street Thibodaux, LA 70301
Dear Mr. Charron:
You have asked this office to advise whether the provisions of the Dual Officeholding and Dual Employment Law, R.S. 42:61 et seq., prohibit you from holding full-time state employment with the Louisiana Department of Transportation and Development and entering into a professional services contracts with parish and municipal governing authorities. Your work under these contracts would be performed in off-duty hours from your state employment.
This office has consistently held that if a position is one of "contract" rather that "employment" as defined by R.S. 42:62(3)[1], the provisions of the dual officeholding and dual employment laws, R.S.42:61, et seq., are not implicated. See Opinions 88-653 and 80-413, copies attached.
Note that state employees are prohibited from entering into consulting or professional services contracts with state executive branch agencies. See R.S. 39:1498(4)[2] and Opinion 99-5, copy attached.
If you are a state classified employee, state civil service rules and regulations should be reviewed to ensure that the simultaneous holding of the positions discussed is not prohibited. For further clarification regarding this issue, please contact Mr. Robert Boland, General Counsel, Louisiana Department of State Civil Service, P.O. Box 94111, Capitol Station, Baton Rouge, LA 70804, phone 225-342-8272.
Finally, any questions concerning the Code of Governmental Ethics should be forwarded to the Louisiana State Board of Ethics, 2415 Quail Drive, Baton Rouge, LA 70808, phone 225-763-8777. *Page 2 
We hope the foregoing is helpful to you. Should you have other questions in which we may provide assistance, please contact this office.
 Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY:___________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
 KLK:arg *Page 1 
 DECEMBER 29 1988. OPINION NUMBER 88-653
7B DUAL OFFICEHOLDING
U.S. 42:63
Member of the Legislature who enters into a contract, with a subsidiary agency of a local governing body, to perform consulting and managerial services does not violate Dual Officeholding Law.
Honorable Irma M. Dixon State Representative Post Office Box 4070 New Orleans, Louisiana 70178-4070
Dear Ms. Dixon:
In your letter dated December 6, 1988, you have requested an opinion of this office. You state that the Audubon Park Commission has entered into a contract with the Audubon Institute, a private non-profit corporation, which operates the New Orleans Zoological Gardens and the Aquarium of the Americas.
The Institute would like to retain you under a contractual agreement, as Director of Operations for the Aquarium. The Commission formed the Institute for the purposes of operating and maintaining the Aquarium.
We are enclosing a copy of an opinion of this office, 88-618, to the Honorable Michael McCleary, State Representative, which deals with an almost identical set of facts.
Consistent with our earlier opinion it is the opinion of this office that if the relationship between you and the Institute is one of contract rather than "employment" as defined in R.S. 42:62(3), the provisions of the Dual Officeholding Statute are not violated.
Thus, it is the opinion of this office that you may legally enter into a contract individually with the Audubon Institute to perform contractual consulting services for the Aquarium of the Americas because such a contractual relationship will not result in an "employment" as defined by the Louisiana Dual Officeholding Law. *Page 2 
Trusting that the foregoing sufficiently answers your inquiry, I remain
 Sincerely,
 WILLIAM J. GUSTE, JR. Attorney General
 BY:____________ KENNETH C. DEJEAN Chief Counsel
 KCD:mac
 Enclosure *Page 1 
 April 7, 1980 OPINION NUMBER 80-413
78 . . . Officers-Dual Officeholding
22-B . . . Education Colleges and Other Higher Education
10-A . . . State Employees and Dependants
Full time or part time state employees may not also be employed by branch of Federal government.
State employee may serve as independent contractor to Federal Government establishment.
Mr. James R. Patin Vice Chancellor for Business Affairs Louisiana State University Medical Center 1440 Canal Street — Suite 1510 New Orleans, Louisiana 70112
Dear Mr. Patin:
In your letter of March 20, 1980, you requested an opinion clarifying Act 700 of 1979; the comprehensive dual officeholding provision. Specifically you asked if:
 1. Faculty members of the LSU Medical Center may be full-time or part-time employees of the Veterans Administration Medical Center?
 2. Faculty members of the LSU Medical Center may receive consultation income from Veterans Administration?
 3. Part-time university employees may be employed full-time by Veterans Administration?
The Veterans Administration is an independent establishment in the executive branch of the federal government. Congress created the Veterans Administration by statute, 38 USC 201, to deal with laws which provide benefits for veterans.
The Louisiana State University is within the executive branch of state government. *Page 2 
Dual officeholding prohibitions are provided for in R.S. 42:63. Subsection (A) of the statute states in part:
 "No person holding. . . . employment in any of the branches of state government. . . . shall at the same time hold. . . . employment. . . . in the government of the United States__"
Employment is defined in R.S. 42:62(3) as
 ". . . any job compensated on a salary or per diem basis other than an elective or appointive office, in which a person is an employee of the state government or of a political subdivision thereof."
In answer to your first question, faculty members of the Louisiana State University Medical Center may not also serve as full-time or part-time employees of the Veterans Administration. The faculty members hold employment in state government and there-fore, on the basis of R.S.42:63(A), they may not also hold employment in Veterans Administration which is established in a branch of the federal government.
As to your second question, faculty members of the Louisiana State University Medical Center may receive consultation income from Veterans Administration if the consultant is acting as an independent contractor rather than as an employee of the Veterans Administration. Such a relationship is beyond the scope of the dual officeholding provisions. Attorney General's Opinion Number 79-1440 supported this contention and cited factors indicating the presence of the independent contractor/employee relationship. The opinion stated:
 "An independent contractor, as opposed to a servant (employee), usually contracts to do a specific amount of work according to his own methods. The employer exerts little control over the actions of the independent contractor. *Page 3 
 Mode of payment is not decisive in determining whether an employee is actually an independent contractor, though payment by the job indicates the existence of an independent contractor/employee relationship."
These factors do not constitute the sole criteria in ascertaining the presence of an independent contractor/employee relationship.
However, they provide proper guidelines for consideration in determining whether the Louisiana State University faculty member is acting as an independent contractor or employee with respect to the Veterans Administration.
Question three must receive the same answer as question one. Revised Statute 42:63(A) makes no distinction between full time and part-time state employment. A state employee may not also be employed in a branch of the federal government.
In conclusion, dual officeholding provisions prohibit full-time and part-time employees of the state from simultaneously holding employment in a branch of the federal government. There are no relevant statutory exceptions to this prohibition. Revised Statute 42:63(B) allows an employee of an educational institution to simultaneously hold an elective or appointive office. However, this exception is inapplicable to the present opinion which relates only to employment possibilities. Prohibited dual officeholding does not arise if the state employee is merely acting as an independent contractor for the Veterans Administration.
 Very truly yours,
 WILLIAM J. GUSTE, JR. ATTORNEY GENERAL
 BY:_________________ KENNETH C. DEJEAN ASSISTANT ATTORNEY GENERAL
 KCD:lg *Page 1 
 May 13, 1999 OPINION 99-5
78 DUAL OFFICEHOLDING
61-B LAWS
LSA-R.S. 39:1498(4)
LSA-R.S. 39:1498.2
LSA-R.S 42:61
State university employees are prohibited from entering into a consulting or professional services contract with state executive branch agencies, absent circumstances warranting applicability of exception provided by law.
Capt. Milton M. Crager LSUMC University Police 1501 Kings Highway Shreveport, LA 71130
Dear Capt. Crager:
In response to your inquiry of recent date, we find the contractual prohibitions set forth in LSA-R.S. 39:1498(4) to be applicable. The statute provides, in pertinent part:
 § 1498. Approval of contract; penalties
 A. Before approving a proposed contract for professional, personal, consulting, or social services, the director of the office of contractual review or an assistant shall have determined that:
 * * * (4) No current state employee will engage in the performance of the proposed contract except as provided for in LSA-R.S. 39:1498.2.
You, as a state employee, may not contract[1] with a state executive branch agency. The Louisiana State Board of Private Investigator Examiners, created by LSA-R.S. 37:3504, is within the Department of Safety and Corrections, which is defined as an executive branch of state government by LSA-R.S. 36:4(A)(8):
 4. Structure of executive branch of state government
 A. In accordance with the provisions of Article IV, Section 1 and Article XIV, Section 6 of the Constitution of Louisiana, all offices, boards, commissions, agencies, and instrumentalities of the executive branch of state government, whether constitution or statutory, and/or their functions, powers, duties, and *Page 2 responsibilities shall be allocated, either in the Act by which this Title was created or by legislation enacted subsequent thereto, within the departments listed in this Section, except as provided in Subsections B and C hereof, and in order to comply with this constitutional mandate, the agencies of the executive branch of state government hereinafter enumerated, whether heretofore created by the constitution or by statute, and/or their functions, powers, duties, and responsibilities are allocated, in the manner hereinafter set forth in this Title, within the following designated departments:
 * * * (8) Department of Public Safety and Corrections (Emphasis added).
Thus, a state employee employed by the LSU System is precluded from entering into a professional services contract with a board created within a state executive branch agency[2]unless the state employee falls within the exceptions of LSA-R.S. 39:1498.2.[3] Our review *Page 3 
indicates that you do not fall within the exception, and we therefore conclude that such an arrangement is prohibited by law. In accord is Attorney General Opinion 91-249, attached.
However the Dual Officeholding and Dual employment Laws, R.S. 42:61, et seq., prohibit only the simultaneous holding of two full-time state employments. R.S. 42:63(E) provides:
 E. No person holding a full-time appointive office or full-time employment in the government of this state or of a political subdivision thereof shall at the same time hold another full-time appointive office or full-time employment in the government of the state of Louisiana, in the government of a political subdivision thereof, or in a combination of these.
The law does not prohibit one from holding a full-time state employment and a part-time state employment, as defined by state law.[4] Thus, if you held part-time employment with the board, *Page 4 
as opposed to a contractual relationship, then the prohibition of R.S.39:1498 would be removed.
The foregoing conclusions are issued absent a review of civil service regulations which might be applicable to you in your university employment. Further, no examination of the Code of Governmental Ethics has been made, as those questions are appropriately within the jurisdiction of the Louisiana Ethics Commission.
 Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY:_____________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
 KLK:ams
[1] R.S. 15:146(A)(1) provides:
A. (1) There is hereby created and established as a state agency within the office of the governor the Louisiana Public Defender Board to provide for the supervision, administration, and delivery of a statewide public defender system, which must deliver uniform public defender services in all courts in this state. The board shall be a body corporate with the power to sue and be sued.
[2] Section 14(B) of Act 307 states, in part, that "the district public defender shall be the successor in every way to the judicial district indigent defender board from which such duties and functions are transferred, and every act done in the exercise of such duties and functions by the district public defender shall be deemed to have the same force and effect under any provisions of law in effect as if done by the judicial district indigent defender board from which such duties and functions are transferred".
[3] R.S. 42:62(9) defines "political subdivision" as follows:
(9) "Political subdivision" means a parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions. In addition for the purposes of this Part, mayor's courts, justice of the peace courts, district attorneys, sheriffs, clerks of court, coroners, tax assessors, registrars of voters, and all other elected parochial officials shall be separate political subdivisions.
[4] R.S. 42:62(1), (2) and (3) provide:
(1) "Elective office" means any position which is established or authorized by the constitution or laws of this state or by the charter or ordinances of any political subdivision thereof, which is not a political party office, and which is filled by vote of the citizens of this state or of a political subdivision thereof.
(2) "Appointive office" means any office in any branch of government or other position on an agency, board, or commission or any executive office of any agency, board, commission, or department which is specifically established or specifically authorized by the constitution or laws of this state or by the charter or ordinances of any political subdivision thereof and which is filled by appointment or election by an elected or appointed public official or by a governmental body composed of such officials of this state or of a political subdivision thereof.
(3) "Employment" means any job compensated on a salary or per diem basis, other than an elective or appointive office, in which a person is an employee of the state government or of a political subdivision thereof.
[5] R.S. 15:168 states:
168. Judicial district indigent defender fund
A. There is hereby created within each judicial district an indigent defender fund which shall be administered by the district public defender and composed of funds provided for by this Section and such funds as may be appropriated or otherwise made available to it.
B. (1) Every court of original criminal jurisdiction, except in the town of Jonesville, in the city of Plaquemine, and in mayors' courts in municipalities having a population of less than five thousand, shall remit the following special costs to the district indigent defender fund for the following violations, under state statute as well as under parish or municipal ordinance, except a parking violation. The sum of thirty-five dollars shall be assessed in cases in which a defendant is convicted after a trial, a plea of guilty or nolo contendere, or after forfeiting bond and shall be in addition to all other fines, costs, or forfeitures imposed.
(2) Such amounts shall be remitted by the respective recipients thereof to the judicial district indigent defender fund monthly by the tenth day of the succeeding month.
C. Except as otherwise provided by the Louisiana Public Defender Act, the funds provided for in this Section, and any other self-generated revenue and all interest or other income earned from the investment of such funds and self-generated revenue shall be retained in the district and shall be used and administered by the district public defender.
D. No defendant who has retained private counsel of record shall be assessed any costs to be credited to the indigent defender fund, other than the special costs established by Subsection B of this Section, unless the board has provided representation of record for that defendant at some point in that criminal proceeding.
E. Any surplus monies in the judicial district indigent defender fund on August 15, 2007, shall be retained in that judicial district and remain in the judicial district indigent defender fund. Any unexpended and unencumbered monies in the judicial district indigent defender fund at the close of each fiscal year shall remain in the judicial district indigent defender fund. Monies in the fund shall be administered and used solely and exclusively for purposes of delivering indigent defender services in that judicial district.
[6] R.S. 15:161(E)(13) empowers the district public defender to "employ or terminate district personnel, manage and supervise all district level work, including establishment of district personnel salaries, subject to review by the board for compliance with salary guidelines established by the board through the adoption of rules".
R.S. 15:147(B)(16) requires the Board to adopt rules "for the establishment of salary ranges for attorneys and support staff delivering public defender services . . ."
[1] R.S. 42:62(3) states:
(3) "Employment" means any job compensated on a salary or per diem basis, other than an elective or appointive office, in which a person is an employee of the state government or of a political subdivision thereof.
[2] R.S. 39:1498(4) states:
(4) No current state employee will engage in the performance of the proposed contract except as provided for in R.S. 39:1498.2.
 * * *
R.S. 39:1498.2 states:
1498.2. Professional, personal, and consulting service contracts with state employees
A. State agency personnel in the medical, nursing or allied health fields, state employees who are qualified to serve as interpreters for the deaf, faculty members of public institutions of higher education, and state employees selected to serve as instructors in the paralegal studies course of the division of continuing education at a state college or university may be employed by other state agencies through a contract for professional, personal, consulting, or social services in accordance with rules and regulations adopted by the office of contractual review. No such faculty member, except those who are also employed by private firms, may contract for the design or redesign of a state-owned facility in which the services of a professional architect or engineer, or both, are required.
B. Additionally, each professional, personal, consulting, and social service agreement between a governmental body as defined in R.S.39:1484(11) and a faculty member of any state college or state university shall be subject to the policies and procedures promulgated by each respective state college and university and the management boards having authority over the respective institution of higher education in which the faculty member is a member and the Board of Regents. Notwithstanding any other provision of law, each such agreement shall be subject to the written approval of the president of the college or university which employs the faculty member, and written notification of agreement and approval shall be given to the appropriate management board.
C. The list of occupations exempted in this Section from the provision of R.S. 39:1498(4) may be increased by rules adopted by the office of contractual review.
D. Notwithstanding any other provisions of law to the contrary, the Louisiana School for the Deaf is hereby authorized to enter into professional, personal, consulting, and social services contracts with an employee of the school to provide sign language and interpreting services which are independent of the employee's assigned duties and regular work hours, and for which compensation may be paid.
E. Notwithstanding any other provisions of law to the contrary, the Louisiana Commission for the Deaf is hereby authorized to enter into professional, personal, consulting, and social services contracts with an employee of the commission to provide sign language and interpreting services which are independent of the employee's assigned duties and regular work hours, and for which compensation may be paid; however, such contract is authorized only if a person who is not an employee of the commission is unavailable for such services.
[1] The following statutory definition of "contract" is found within the provisions of R.S. 39:1484(5):
 (5) "Contract" means every type of state agreement, including orders and documents purporting to represent grants, which are for the purchase or disposal of supplies, services, construction, or any other item. It includes awards and notices of award; contracts of a fixed price, cost, cost-plus-a-fixed-fee, or incentive type, contracts providing for the issuance of job or task orders, and letter contracts. It also includes contract modifications with respect to any of the foregoing.
[2] R.S. 37:3504 pertinently provides:
 § 3504 Louisiana State Board of Private Investigator Examiners; creation; qualifications; domicile; terms of office; confirmation; oath of office; compensation
 A. The Louisiana State Board of Private Investigator Examiners is hereby created within the Department of Public Safety and Corrections. The board shall be a body corporate and may sue and be sued.
 B. The board shall be composed of seven members appointed by the governor. . . . . .
 C. The board shall be domiciled in Baton Rouge and may meet at such other locations In the state as may be determined by the board.
 D. Each member shall serve at the pleasure of the governor. Each appointment by the governor shall be submitted to the Senat for confirmation.
 E. Any vacancy on the board caused by the death, resignation, or disability of a member shall be filled by appointment by the governor. A person appointed to fill a vacancy on the board shall possess the same qualifications and residency requirements as the person whose position on the board is being filled by the appointment.
 F. Each member of the board shall receive a certificate or commission from the governor and before beginning his term of office shall file with the secretary of state a written oath or affirmation for faithful discharge of his official duties.
[3] Included herein is the entirety of R.S. 39:1498.2, providing:
 § 1498.2 Professional, personal, and consulting service contracts with state employees.
 A. State agency personnel in the medical, nursing or allied health fields, state employees who are qualified to serve as interpreters for the deaf, faculty members of public institutions of higher education, and state employees selected to serve as instructors in the paralegal studies course of the division of continuing education at a state college or university may be employed by other state agencies through a contract for professional, personal, consulting, or social services in accordance with rules and regulations adopted by the office of contractual review. No such faculty member, except those who are also employed by private firms may contract for the design or redesign of a state-owned facility in which the services of a professional architect or engineer, or both, are required.
 B. Additionally, each professional, personal, consulting, and social service agreement between a governmental body as defined in R.S. 39:1484(11) and a faculty member of any state college or state university shall be subject to the policies and procedures promulgated by each respective state college and university and the management boards having authority over the respective institution of higher education in which the faculty member is a member of the Board of Regents. Notwithstanding any other provision of law, each such agreement shall be subject to the written approval of the president of the college or university which employs the faculty member, and written notification of agreement and approval shall be given to the appropriate management board.
 C. The list of occupations exempted in this Section from the Provisions of R.S. 39;1498(4) may be increased by rules adopted by the office of contractual review.
 D. Notwithstanding any other provisions of law to the contrary, the Louisiana School for the Deaf is hereby authorized to enter into professional, personal, consulting, and social services contracts with an employee of the school to provide sign language and interpreting services which are independent of the employee's assigned duties and regular work hours, and for which compensation may be paid.
 E. Notwithstanding any other provisions of law to the contrary, the Louisiana Commission for the Deaf is hereby authorized to enter into professional, personal, consulting, and social services contracts with an employee of the commission to provide sign language and interpreting services which are independent of the employee's assigned duties and regular work hours, and for which compensation may be paid; however, such contract is authorized only if a person who is not an employee of the commission is unavailable for such services.
[4] (3) "Employment" means any job compensated on a salary or per diem basis, other than an elective or appointive office, in which a person is an employee of the state or of a political subdivision thereof.
(4) "Full-time" means the period of time which a person normally works or is expected to work in an appointive office or employment which is at least seven hours per day of work and at least thirty-five hours per week of work.
(5) "Part-time" means the period of time which a person normally works or is expected to work in an appointive office or employment which is less than the number of hours of work defined in this Section as full-time.